NEW ENGLAND SCREW CO. (BLIVEN v.). See Case No. 1,550.

## Case No. 10,157.

NEW ENGLAND SCREW CO. v. BLIVEN et al.

BLIVEN et al. v. NEW ENGLAND SCREW CO.

[4 Blatchf. 97;[1] 38 Hunt, Mer. Mag. 582.]

Circuit Court, S. D. New York. Sept. 23, 1857.[2]

SALE—USAGE OF TRADE—BREACH OF CONTRACT IN NOT FILLING ORDERS.

A customer, who has dealt with his vendor in conformity with a usage known to the customer, in regard to filling orders for goods, must, if he sues for a breach of contract by the vendor in not filling orders, establish a right superior to that arising out of such usage, or else he cannot recover, provided he has been treated fairly, in conformity with such usage.

The first of these suits [the New England Screw Company against Charles Bliven and Edward B. Mead] was an action to recover a balance due to the plaintiffs for screws delivered to the defendants. [See Case No. 10,156.] The second [Charles Bliven and Edward B. Mead against the New England Screw Company] was an action to recover damages for an alleged breach of contract in not filling orders for screws. On the trials, verdicts were taken for the plaintiffs severally, subject to the opinion of the court, upon cases to be made.

Edwin W. Stoughton, for the company.

George William Wright, for Bliven and Mead.

NELSON, Circuit Justice. On looking into the facts, I am satisfied that the plaintiffs in the first suit are entitled to a judgment for $1,990,01, with interest from September 27th, 1853.

The evidence in the second suit is full to show the usage of the company in filling the orders of their customers, and that it was known to these parties; and, also, that their dealings with the company from its commencement had been in conformity with it. The usage was, on receiving orders from their customers, to file them away and fill them up in turn, in proportion to other orders on hand at the same time to filled up. The company had from five to six hundred customers, with standing orders, to be filled as fast as practicable, or as the capacity to manufacture screws would permit. For some time, the gimlet or sharp-pointed screws, as they were called, were manufactured at no other establishment, and the demand for the article seems to have been very great. For aught that appears in the case, the parties here were dealt with upon the same footing as other customers of the company. Many of the orders were not filled in six months or a year, and some never in full. The course of the usage necessarily left the apportionment

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Affirmed in 23 How. (64 U. S.) 420, 433.]

of the screws, as manufactured, upon the orders on hand, to the discretion of the company. But, if otherwise, it would be an endless undertaking to ascertain, with any degree of certainty, whether the apportionment had been pro rata, in the filling up of some five or six hundred orders; and, without such an inquiry, it would be impossible to ascertain whether injustice was done to these parties or not.

An effort has been made to take the order given on the 15th of October, 1852, out of the usage, on the ground that it was accepted absolutely, to be filled on the 15th of March, and the 15th of April following. But, on looking into the evidence on the subject, and the circumstances under which the order was given and accepted, I am satisfied that it forms no exception to the general usage, and was accepted subject to it.

These parties seem to have been fairly dealt with, the same as all other customers, and, unless they can establish some right superior to that arising out of the usage, in filling their orders, they have no well-founded ground of complaint. No such right has, in my judgment, been established, and I am, therefore, satisfied that judgment should be rendered in favor of the company, in the second suit.

This decision was affirmed by the supreme court on writ of error. 23 How. [64 U. S.] 420, 433.